NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

BARBARA WEBB                          :        Civil Action No. 05-2232 (FSH)
        Plaintiff,         :

                       :        **OPINION**

vs.                                   :

                       :

JO ANNE B. BARNHART                   :        August 9, 2006
COMMISSIONER OF SOCIAL                :
SECURITY,                             :
        Defendant.         :
_____      :

**HOCHBERG, District Judge:**

       This matter comes before the Court upon Plaintiff Barbara Webb's motion to review a final determination of the Commissioner of Health and Human Services, pursuant to Section 405(g) of the Social Security Act. 42 U.S.C. § 405(g).  The Court has reviewed the submissions of the parties and considers the motion on the papers pursuant to Fed. R. Civ. P. 78.

**I.**    **Background.**

       Plaintiff Barbara Webb ("Ms. Webb") applied for Supplemental Security Income on July 30, 2002, (R. at 63-65), and for Disabled Widow's Benefits on August 20, 2002 (R. at 257-59).  Ms. Webb's disability report dated July 30, 2002 stated that her ability to work was limited by her obesity, her heart problems, and numbness in her hands.  (R. at 70).  The Social Security Administration ("SSA") determined that Ms. Webb did not qualify for benefits, (R. at 43), and upon Ms. Webb's request for reconsideration of her initial application, the SSA found that the previous determination was proper (R. at 51).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 6, 2004.

At the hearing, Plaintiff testified that she last worked in 1982 and that she filed her claims as a result of numbness in her hands, and pain in her back, legs, and neck.  (R. at 29-30). Plaintiff also testified that she performs minor household chores, including cooking small meals and washing dishes.  (R. at 33).  Ms. Webb stated that her back pains cause her to lie in bed for most of the day, though she is able to bathe and dress herself.  (R. at 34).  She also stated that her legs become numb if she sits for too long.  (R. at 34).  Ms. Webb testified that she has numbness in her hands, which causes her to drop things, and that she can carry about five pounds.  (R. at 35).

In a decision dated April 26, 2004, the ALJ determined that Ms. Webb was not entitled to Disabled Widows Benefits or to Supplemental Security Income payments.  (R. at 20-25).  The ALJ based this decision on his finding that Ms. Webb is not disabled and can perform work defined at a "light" work level.  (R. at 20-25).  To reach this determination, the ALJ relied on Ms. Webb's testimony at the hearing as well as the medical evidence she provided, which included medical reports and test results.  (R. at 20-25).

## II.     Standard For Finding Disability.

An individual may be entitled to Social Security Benefits upon a finding of disability demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D).  An individual will be deemed to be disabled only if the

-2-

impairment is so severe that the individual is not only unable to perform previous work, but cannot "engage in any other kind of substantial gainful work which exists in the national economy," considering her age, education, and work experience.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Substantial Gainful Activity:  The Commissioner first considers whether the individual is currently engaged in substantial gainful activity.  If there is such activity, the individual will be found not disabled without consideration of her medical condition.  20 C.F.R.§§ 404.1520(a) and 416.920(a).

Severe Impairment:  If there is no substantial gainful activity, the plaintiff must then demonstrate a severe impairment or combination of impairments that significantly limits the plaintiff's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

Listed Impairment:  If the plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth in 20 C.F.R. Part 404, Subpt. P or is equal to a Listed Impairment.  If the individual has such an Impairment, the Commissioner will find the individual disabled.

Residual Functional Capacity:  If the individual does not have a listed impairment, the fourth step is to determine whether, despite the impairment, the individual has the residual functional capacity to perform past relevant work.  If the individual does have the capacity to perform past work, there will not be a finding of disability. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

-3-

Other Work: Finally, if the individual is unable to perform work done in the past, the Commissioner then considers the individual's residual functional capacity, age, education and past work experience to determine the capacity to perform any other work.  If the individual cannot perform other work, there will be a finding of disability.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  *Wallace v. Sec. of Health and Human Srvcs*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the individual is capable of performing gainful employment other than the claimant's past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## III.    **Standard of Review for Disability Benefits.**

In accordance with 42 U.S.C. § 405(g), this Court must review the factual findings of the ALJ to determine whether the administrative record contains substantial evidence for such findings.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  A decision concerning disability benefits must be upheld by the Court if an examination of the record reveals substantial evidence supporting the ALJ's conclusion.  42 U.S.C. § 405(g).  Substantial evidence is more than a mere scintilla, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Con. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).  "The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."

*Snee v. Sec. of Health and Human Srvcs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).

## IV.   Analysis.

In reaching the determination that Plaintiff was not entitled to disability benefits, the ALJ concluded at step three that Plaintiff's osteoarthritis and obesity, though severe, did not meet or equal in severity the clinical criteria of any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. at 25).  At step five, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of light work and therefore could perform jobs that exist in significant numbers in the national economy.  (R. at 25).  Plaintiff contends that (1) the ALJ did not properly evaluate her obesity at step three; (2) that in assessing her residual functional capacity, the ALJ failed to property evaluate her subjective complaints of pain; and (3) the ALJ erred at step five by wrongly assessing her capacity to perform the full range of light work and by failing to obtain a vocational expert.

### A.  The ALJ's Analysis at Step Three

Ms. Webb claims that the ALJ erred at step three because he did not properly evaluate her obesity.  Specifically, she purports (1) that the ALJ did not explain his rationale in reaching his decision; (2) that he did not properly consider whether Ms. Webb's obesity met or equaled a listed impairment; and (3) that he failed to obtain an expert's opinion on the issue of equivalence.

#### 1.  The ALJ's Rationale

Plaintiff contends that the ALJ did not provide reasons for his decision, as required by *Burnett v. Commissioner of Social Security.*  220 F.3d 112 (3rd Cir. 2000).  *Burnett v.*

*Commissioner of Social Security* requires the ALJ "to set forth the reasons for his decision." *Id.*

at 119-20 (3rd Cir. 2000).  As the Third Circuit explained, "*Burnett* does not require the ALJ to

use particular language or adhere to a particular format in conducting his analysis.  Rather, the

function of *Burnett* is to ensure that there is sufficient development of the record and explanation

of findings to permit meaningful review" of the step three determination.  Jones v. Barnhart, 364

F.3d 501, 505 (3d Cir. 1994).  There was sufficient development of the record and explanation of

findings in Plaintiff's case to satisfy the *Burnett* requirement.  The ALJ specifically discussed

whether Ms. Webb's impairments met or equaled Listings §§ 14.09 and 1.02.  20 C.F.R. Pt. 404,

Subpt. P, App. 1 §§ 1.02 and 14.09, and based on the medical evidence, concluded that she did

not meet the criteria for either of these listings.

### 2.  Whether Ms. Webb's Obesity Met or Equaled an Impairment

The ALJ's analysis of whether Ms. Webb fulfills the requirements of listings 14.09 and

1.02 satisfies Social Security Ruling ("S.S.R") 02-1p, which provides the ALJ with a rubric

meant to guide his consideration of obesity.  *See* S.S.R. 02-1p.  S.S.R. 02-1p lists four

circumstances under which a finding of obesity is germane to a finding of disability.  *See id.*

The first circumstance under which a claimant with obesity could be found disabled is when the

claimant has an additional impairment besides obesity that meets the requirements of a listing.

*Id.*  The second circumstance is when the claimant has an additional impairment that, in

combination with obesity, meets the requirements of a listing.  *Id.*  The third circumstance is

when a claimant's obesity can be considered medically equivalent to a listed impairment.  *Id.*

The fourth circumstance is when obesity is one of a claimant's many impairments, none of

which meet or equal the requirements of a listing, but their combination is equivalent in severity

to a listed impairment.  *Id.*  Ms. Webb contends that the ALJ did not adequately consider whether her condition brings her within the second, third, and fourth circumstances.

The ALJ's determination that Plaintiff's obesity and osteoarthritis do not combine to meet the requirements of Listing 14.09, or are equivalent in severity to Listing 14.09 (circumstances two and four) is supported by substantial evidence. As the ALJ determined, this combination fails because Ms. Webb's osteoarthritis does not meet any of the conditions listed in 14.00B6, which explains how listing-level arthritis under 14.09 must be documented.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00B6.  Plaintiff does not contest the ALJ's determination that there is no medical evidence in the record to support a finding that her arthritis conforms with the conditions listed in 14.00B6.  Plaintiff only focuses on the limitations caused by her obesity. As the Supreme Court noted in *Sullivan v. Zebley*, "a claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment."  493 U.S. 521, 531 (1990).  The claimant, the Court explained, must provide medical evidence that meets all the criteria of the most similar listed impairment.  *Id.*  Since the record lacks sufficient evidence establishing that Plaintiff's arthritis conforms with any of the requirements listed in 14.00B6, an analysis of how Plaintiff's obesity might combine with her arthritis to meet all of the listed impairment's criteria is obviated.

Furthermore, with respect to the third circumstance, the ALJ's finding that Ms. Webb's obesity does not, by itself, equal Listing 1.02 is supported by substantial evidence.  A claimant can be disabled under this listing if her obesity causes a major dysfunction of a joint, characterized by gross anatomical deformity.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.  The joint dysfunction must involve a major peripheral weight-bearing joint, resulting in inability to

ambulate effectively.  *Id.*  Alternatively, the joint dysfunction must involve a major peripheral joint in each upper extremity, resulting in inability to perform fine and gross movements effectively.  *Id.*  Here, the record contains no probative evidence of any dysfunction in one of Ms. Webb's weight-bearing joints, nor does Plaintiff even allege in her brief that such evidence exists.[1]

    3.  Whether the ALJ Was Required to Obtain an Expert's Opinion on the Issue of Equivalence

     Plaintiff misconstrues SSR 96-6p when she claims that the ALJ was required to obtain additional expert evidence from a physician or psychologist designated by the Commissioner on the issue of equivalence before making any determination on whether her obesity and osteoarthritis equaled any of the listed impairments.  Ruling 96-6p lists two circumstances which would trigger this requirement:

---

[1] Dr. Augustin's and Dr. Edwards' diagnoses indicate that Ms. Webb suffers from carpal tunnel syndrome bilaterally.  Dr. Augustin's diagnosis also indicates that Ms. Webb suffers from neuropathy of the upper extremities.  However, as the ALJ noted in his decision, an EMG test performed in May 2003 was normal, indicating no neuropathy of the upper extremities.  Further, an X-ray performed on June 9, 2003 does not indicate any evidence of carpal tunnel syndrome.  Additionally, there is substantial evidence in the record to support a finding that Ms. Webb is not unable to perform fine and gross movements effectively.  This standard is defined in section 1.00B2c of the regulations as an extreme loss of function in both upper extremities.  *Id.* at § 1.00B2c.  Dr. Beggs' Multiple Impairments Questionnaire dated February 6, 2004 does state that Ms. Webb has limitation reaching and fingering, both of which are limitations listed in section 1.00B2c.  However, as noted by the ALJ, Dr. Beggs' determination does not appear to be supported by any objective findings or the record as a whole.  For example, Ms. Webb stated at the hearing before the ALJ that she is able to prepare small meals, a task listed in section 1.00B2c as something a person who can perform fine and gross movements effectively would be able to do.  *Id.*  In sum, there is substantial evidence in the record to indicate that Ms. Webb does not suffer from major joint dysfunction due to her obesity, or any other cause, and thus does not satisfy Listing 1.02.

When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Neither circumstance exists in the present case: the ALJ did not suggest that a judgment of equivalence was reasonable; no additional evidence that in the opinion of the ALJ may have changed the State agency physician's finding that Plaintiff's impairments were not equivalent in severity to any impairment was received   Therefore, the ALJ was under no obligation to obtain an additional expert medical opinion on the issue of equivalence.

**B.  The ALJ's Determination of Plaintiff's Residual Functional Capacity**

Ms. Webb claims that when the ALJ assessed her residual functional capacity, his evaluation of the credibility of her subjective complaints of pain was flawed.  Specifically, Plaintiff argues that the ALJ improperly assessed objective medical evidence that was used to evaluate her credibility, and, in the alternative, that the ALJ should have accredited more weight to Ms. Webb's subjective complaints of pain.

Social Security Ruling 96-7p explains how an ALJ is required to assess a claimant's complaints of pain.  S.S.R. 96-7p.  In the first instance, the ALJ must determine whether the claimant suffers from a "medically determinable physical ... impairment[(s)] ... that could reasonably be expected to produce the individual's pain or other symptoms."  *Id.*; *see also* 20 C.F.R. § 416.929(c)(2).  If the claimant's symptoms are such that their severity cannot be shown by medical evidence alone, then the ALJ is required to consider evidence beyond objective medical evidence.  *See* 20 C.F.R. § 416.929(c)(3).  Once a physical impairment that could

-9-

produce the individual's pain has been shown, the claimant's statements about the intensity and persistence of the pain will not be rejected solely because they cannot be substantiated by medical evidence.  *See* 20 C.F.R. § 416.929(c)(2), S.S.R. 96-7p.

Here, Ms. Webb's subjective complaints of pain, as noted on her Social Security Disability Report and at the hearing, are that she suffers from heart problems, numbness in the hands, back pain, and leg pain.  The objective medical evidence in the record, however, does not corroborate her complaints.  Dr. Augustin's medical report states that Ms. Webb's EKG "revealed normal sinus rhythm" and her chest X-ray was normal.  (R. at 174).  Further, a May 2003 EMG of Ms. Webb's upper extremities was normal.  (R. at 183).  Finally, Ms. Webb's June 9, 2003 X-ray revealed that she suffered from arthritis, not carpal tunnel syndrome.

As noted in 20 C.F.R. 416.929(c) and S.S.R. 96-7p, an ALJ will only consider the claimant's subjective complaints of pain without objective medical evidence when the claimant's symptoms cannot be shown by medical evidence alone or to evaluate the intensity and persistence of the claimant's pain.  Here, however, Ms. Webb's complaints are contradicted, rather than unsupported, by objective medical evidence.  Thus, although Plaintiff's contention that the "ALJ has a duty to 'give serious consideration to a claimant's subjective complaints of pain, even when those complaints are not supported by objective evidence,'"  *Ventura v. Shalala*, 55 F.3d. 900 (3rd Cir. 1995),  is true under some circumstances, the facts of this case did not warrant the ALJ to make such a determination.

### C.  The ALJ's Analysis at Step Five

At step five, the ALJ determined that Ms. Webb had the residual functional capacity to perform light work.  Plaintiff contends that the ALJ erred in his assessment by failing (1) to reconcile the conflicting diagnoses of Doctors Augustin and Edwards; (2) to perform a "function-

by-function" analysis of Ms. Webb's ability to work; and (3) to obtain testimony from a vocational expert.

Although the record does present a conflict between the diagnoses of Doctors Augustin and Edwards over Ms. Webb's ability to squat, this conflict is not material to the ALJ's decision. Plaintiff argues that Dr. Augustin's determination that Ms. Webb is unable to squat precludes a finding that Ms. Webb is able to perform light work.  In support of her contention, Plaintiff cites to S.S.R. 83-10 which provides that "[t]he lifting requirement for the majority of light jobs can be accomplished with occasional rather that [sic] frequent stooping."  However, Plaintiff fails to recognize that an inability to squat is not the same limitation as an inability to stoop.  Plaintiff's ability to squat has no bearing on whether she can perform light work, according to S.S.R. 83-10. Additionally, the Social Security Administration's regulation on the topic does not include any reference to stooping or squatting.  *See* 20 C.F.R. § 416.967.  Thus, it was not necessary for the ALJ to choose among the diagnoses of the two doctors on the issue of squatting.

Furthermore, Plaintiff claims that the ALJ failed to perform a "'function-by-function' assessment of the Plaintiff's ability to perform the exertional and non-exertional requirements of work."  The Social Security Administration's regulations state that a function-by-function analysis by the ALJ includes an evaluation of a claimant's physical, mental, and other abilities affected by that claimant's impairments.  *See* 20 C.F.R. §§ 416.945(a)(4) and 416.945(b-d). Here, the ALJ considered the physical, mental, and other abilities of Ms. Webb when he reviewed the medical reports of Doctors Augustin, Edwards, Beggs, Bayes, and Sheppard in his decision, which included assessments of Plaintiff's physical, mental and other abilities.  The ALJ also contemplated Ms. Webb's X-rays, EMG test, EKG test, and cardiac report.  Therefore, this Court

finds that there is substantial evidence to support the ALJ's finding that Ms. Webb can perform light work.

Finally, Ms. Webb's claim that the ALJ erred because he did not obtain testimony from a vocational expert is unfounded. An ALJ may be required to obtain a vocational expert's opinion when a claimant exhibits a nonexertional impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). A nonexertional impairment is an impairment that limits a claimant's ability to meet the demands of jobs other than strength demands. *See* 20 C.F.R. § 416.969a(c). Nonexertional impairments include an inability to function because of nervousness, difficulty concentrating, and difficulty performing postural functions of some work. *See id.* Ms. Webb claims that her fatigue, pain, manipulative limitation, and obesity are all nonexertional impairments. However, Ms. Webb's fatigue and pain are symptoms and not impairments, *see* S.S.R. 96-4p, and Plaintiff's obesity is not considered a nonexertional impairment under 20 C.F.R. § 416.969(c). Further, Ms. Webb's manipulative limitation is only supported by Dr. Beggs' Multiple Impairments Questionnaire, which was given no significant weight by the ALJ because it was not based on objective findings. In sum, this Court finds that the ALJ did not commit error by not obtaining testimony from a vocational expert.

**V.**      <u>**Conclusion.**</u>

For the aforementioned reasons, and after a careful review of the record, the Court finds substantial evidence to support the ALJ's decision to deny Plaintiff Social Security Benefits.  The ALJ carefully considered the record, including Plaintiff's testimony, and there is substantial evidence in support of the ALJ's decision that none of Plaintiff's impairments meet or equal in severity any of the Listed Impairments and that Plaintiff has the residual functional capacity to perform light work.  Accordingly, this Court will affirm his decision to deny Plaintiff Social Security Benefits.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**